■ In the Matter of DOROTHY JANKE, Respondent, v COMMUNITY SCHOOL BOARD OF COMMUNITY SCHOOL DISTRICT No. 19 et al., Appellants.—In a proceeding pursuant to CPLR article 78, *inter alia*, to review a determination of the appellants dated September 16, 1983, which placed the petitioner's decedent on an involuntary leave of absence for medical reasons,

without pay, the appeal is from (1) a judgment of the Supreme Court, Kings County (Levine, J.), dated October 14, 1987, which, *inter alia,* granted the petition to the extent of vacating the September 16, 1983, placement of the petitioner's decedent on an involuntary leave of absence for medical reasons, without pay, and, (2) so much of an amended judgment of the same court, dated June 1, 1989, as determined that the petitioner is entitled to receive (a) the decedent's back pay for the period beginning with the date the decedent was removed from the payroll until the date of his death, (b) any death benefits the beneficiaries of the decedent would have received had the decedent been on the payroll at the time of his death, (c) payment for certified medical expenses that would have been covered by insurance had the decedent been on the payroll, and (d) any other benefit to which the decedent would have been entitled to, and directed that any pension benefits paid to the petitioner should be adjusted to reflect her decedent's additional time on the payroll.

Ordered that the appeal from the judgment is dismissed, without costs or disbursements, as the judgment was superseded by the amended judgment; and it is further,

Ordered that the amended judgment is modified, by deleting therefrom decretal paragraphs "B" and "C" and substituting therefor a provision vacating the appellants' determination of September 16, 1983, which placed the petitioner's decedent on an involuntary leave of absence for medical reasons, without pay, and directing the appellants to provide the petitioner with back pay and any other benefits the decedent would have been entitled to for the period from September 16, 1983, to October 1, 1984; as so modified, the amended judgment is affirmed insofar as appealed from, without costs or disbursements.

The petitioner's decedent was a tenured teacher in the New York City school system. On May 10, 1982, the appellant Frank C. Arricale II, the Superintendent of Community School District No. 19 (hereinafter the School District) brought charges against the decedent. By letter dated June 30, 1982, the decedent was notified of the existence of probable cause to bring the charges. Pending a hearing on the charges, the petitioner's decedent was suspended with pay.

On September 16, 1983, the Director of Staff Relations of the School District, Robert Riccobono, wrote to the Legal Services division of the appellant Board of Education, informing it that he had decided to drop the charges against the decedent, and requested advice on the procedure to drop the

charges. On that same day, i.e., September 16, 1983, Riccobono placed the decedent on an "unofficial leave of absence without pay". The reason for this action did not appear in the September 16, 1983, letter. However, the appellants allege that the decedent was placed on "unofficial" leave of absence without pay because he refused to resume work when he was asked to do so due to a pending proceeding pursuant to CPLR article 78 "regarding retirement pursuant to an alleged line-of-duty injury".

By letter dated September 27, 1983, the Legal Services division of the Board of Education advised Riccobono that, in order for Superintendent Arricale to drop the charges against the decedent, "the Community School Board must vote to do so in executive session". There is no indication in the record that the Community School Board ever voted to drop the charges. Indeed, the appellants failed to submit any proof that the Community School Board voted to drop the charges, even though the Supreme Court made a specific request for such proof and gave the appellants time to do so.

For the period beginning with his placement on unofficial leave without pay through December 1983 the decedent claimed excused absences based on an on-the-job injury which occurred on May 2, 1980. Again, there is no indication whether or not the decedent's claimed excused absences were denied.

However, on February 3, 1984, the decedent reported for work at the office of the School District, but had to leave when he fell and hit his head. The "Report of Injury" was prepared by Riccobono. By letter dated February 9, 1984, Riccobono advised the decedent that the Medical Division of the Board of Education (hereinafter division) had not rendered a decision on his fitness, that he could not return to service until the division certified that he was fit, and that he should not report for work until the division rendered a decision. The letter also advised the decedent that in order to insure his medical coverage for the period from September 16, 1983, through February 1984, he should "apply for a leave of absence without pay for restoration of health". By letter dated October 1, 1984, the decedent was informed that the division had found him not fit for duty and that he was being "placed on a leave without pay for more than one month effective September 5, 1984". By letter dated March 7, 1985, the decedent was informed that the medical arbitrator "has ruled that the Medical Bureau acted correctly in finding [him] not fit, that absences from October 1, 1984, through the present are due to

personal illness", and that the "findings of the Medical Arbitrator are equally binding on [him] and the Board of Education".

Pursuant to a collective bargaining agreement between the decedent's union and the Board of Education, the "arbitrator's authority shall be limited to determining the medical aspects of the teacher's claim" and the "arbitrator's decision * * * shall be accepted as final * * * by the Board and the teacher". The decedent commenced a proceeding pursuant to CPLR article 78 in April 1985. Upon his death in August 1985 the petition was dismissed without prejudice to renewal upon the proper substitution of parties. The decedent's wife, as the administratrix of the estate of the decedent, thereafter commenced the instant proceeding pursuant to CPLR article 78.

The appellants contend that the proceeding is time-barred since it was not commenced within four months of the September 16, 1983, letter which placed the decedent on "unofficial" leave of absence without pay (see, CPLR 217). Alternatively, they claim that the decision to place the decedent on leave without pay became final on February 9, 1984, and that the petition is barred by CPLR 217 because it was not commenced within four months of February 9, 1984.

We find that the proceeding was timely commenced. The crux of the petitioner's allegations is that the decedent was improperly suspended without pay while the charges under Education Law § 3020-a were still pending. The petitioner claims that the appellants could not circumvent their statutory duty to maintain the decedent on the payroll by converting his status to one of "involuntary medical leave". We find that the appellants were under a continuing duty to pay the decedent's salary at the time he was removed from the payroll. A teacher against whom charges have been brought pursuant to Education Law § 3020-a may be suspended pending a disciplinary hearing. However, Education Law § 3020-a does not authorize the withholding of a teacher's pay during a period of suspension prior to the hearing (see, Matter of Derle v North Bellmore Union Free School Dist., 77 NY2d 483; Matter of Hawley v South Orangetown Cent. School Dist., 67 NY2d 796; Matter of Adlerstein v Board of Educ., 64 NY2d 90). Where the claim is that a public official has failed to perform a continuing statutory duty, the right to relief will not be barred by the four-month Statute of Limitations (see, e.g., Cash v Bates, 301 NY 258; Matter of Powers v La Guardia, 292 NY 695; Matter of Lippold v Board of Educ., 67 Misc 2d 499). We therefore reject the appellants' argument

that this proceeding is time-barred because it was not commenced within four months of September 16, 1983.

We also reject the appellants' argument that the proceeding had to be commenced within four months of February 9, 1984, when the decedent was informed that he could not return to work until the division certified that he was medically fit. Assuming that the appellants' continuing duty to pay the decedent's salary would end if he was found medically unfit to work, the determination as to his fitness was not final until March 1985. This proceeding, commenced the following month, was therefore timely.

The appellants' reliance on *Matter of Edmead v McGuire* (67 NY2d 714) and *Matter of Lubin v Board of Educ.* (60 NY2d 974, *cert denied* 469 US 823), is misplaced because those cases are clearly distinguishable from the case at bar. In *Edmead*, the petitioner knew the determination to retire him was final and, indeed, he went through retirement processing. In *Lubin*, the petitioner knew his discharge had become final over four months before he brought his petition. On the contrary, in the instant case, the decedent was advised that if he disagreed with the findings of the medical bureau, he should request review by an independent medical arbitrator. Thus, the appellants implicitly acknowledged that their determination to place the decedent on an involuntary medical leave without pay could be affected by the medical arbitrator's decision.

The appellants also contend that since the decedent chose arbitration, he should have commenced a proceeding pursuant to CPLR article 75 rather than a proceeding pursuant to CPLR article 78. We do not agree. The medical arbitrator's decision pertains only to the medical aspects of the claim, and the petitioner does not challenge the medical basis for that decision. While the medical arbitrator's findings necessarily affect the finality of the determination, the determination to suspend the petitioner's decedent without pay was made by the board and is subject to review via a proceeding pursuant to CPLR article 78.

Addressing the merits of the petition, we agree with the petitioner's contention that the decedent was improperly suspended without pay in September 1983 pending a hearing on the disciplinary charges. Since Education Law § 3020-a does not obligate a school board to suspend a teacher pending a hearing on the charges against him, a school board which had previously suspended the teacher may decide to end the

suspension and request that the teacher return to service, even as the charges are pending. If the teacher refuses to return to work, the school board may take proper action, such as removing him from the payroll. At bar, other than the appellants' mere allegation that the decedent refused to return to work, there is nothing in the record to establish that fact. The appellants have not produced any documentation showing that the decedent was asked to return to work or risk being removed from the payroll. Indeed, the letter of September 16, 1983, does not indicate that the decedent was being removed from the payroll because he had refused to return to service. A teacher's suspension with pay may not be converted to one without pay absent a showing of obstructive conduct or bad faith on the part of the teacher (see, Matter of Belluardo v Board of Educ., 68 AD2d 887; Matter of Russell, 22 Ed Dept Rep 321; see also, Matter of Derle v North Bellmore Union Free School Dist., supra). By placing the decedent on an unofficial leave of absence without pay on September 16, 1983, the suspension with pay was converted to one without pay for no apparent reason. If there was a justifiable reason, it does not appear in the record. The appellants' mere allegation that the decedent refused to return to work after being asked to do so is not sufficient.

Although we conclude that the decedent was improperly removed from the payroll on September 16, 1983, we disagree with the Supreme Court's conclusion that the petitioner is entitled to receive back pay and benefits from that date to the date of the decedent's death in 1985. The petitioner has failed to offer any grounds to set aside the arbitrator's determination that the decedent was unfit for duty after October 1, 1984, and indeed has not challenged the medical basis of that decision. We therefore find that the petitioner is entitled to retroactive pay and benefits for the period of September 16, 1983, to October 1, 1984. Rosenblatt, J. P., Eiber, O'Brien and Ritter, JJ., concur.